This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Robert Watkins, appeals from the judgment of the Summit County Court of Common Pleas, which convicted him of burglary. We affirm.
{¶ 2} On May 13, 2002, the Summit County Grand Jury charged Defendant with one count of burglary, in violation of R.C. 2911.12(A)(1). Thereafter, Defendant entered a not guilty plea and the case was scheduled for a jury trial. On July 19, 2002, Defendant was found guilty of burglary and sentenced to a maximum eight years in prison. Defendant timely appealed raising three assignments of error for review.
 ASSIGNMENT OF ERROR I
{¶ 3} "The verdict was against the manifest weight of [the] evidence."
{¶ 4} In his first assignment of error, Defendant maintains that his conviction was against the manifest weight of the evidence. More specifically, Defendant argues that he was not identified as the perpetrator of the crime inasmuch as "the direct inconsistencies" of the victim's testimony "coupled with the fact that she was suffering severe stress and panic suggest that the jury lost its way by adopting these inconsistencies and doubtful testimony of [the] [v]ictim[.]" We disagree.
{¶ 5} "[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing State v. Thompkins, 78 Ohio St.3d 380, 390
(Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
{¶ 6} Defendant was found guilty of burglary, in violation of R.C. 2911.12(A)(1). That section provides that "[n]o person, by force, stealth, or deception, shall *** [t]respass in an occupied structure *** when another person other than an accomplice of the offender is present, with purpose to commit in the structure *** any criminal offense[.]" R.C. 2911.12(A)(1). One acts purposely "when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). An "occupied structure" is defined as "any house *** [that] is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present." R.C. 2909.01(C)(2). See, also, R.C. 2911.12(B). Theft, whereby one purposely deprives an owner of property without consent, is a criminal offense under R.C. 2913.02(A)(1).
{¶ 7} At trial, the victim, Cheryl Ingram ("Ingram"), testified that on the evening of May 2, 2002, she was watching television in her home at 1139 Frederick Boulevard, and began to fall asleep on the couch. Around 11:00 p.m., she was awakened by her dog's barking and a "[b]oom[,] [b]oom[,]" at the kitchen door. Ingram stated that "this man came running in, and [she] asked him what was he doing in [her] house?" Ingram then identified Defendant as the man that broke into her home. She recalled Defendant began "pushing and running into things[.]" Ingram became scared and ran out her front door and proceeded to her neighbor's house. Upon hearing Ingram's story, the neighbor quickly called the police. Ingram then stood on her neighbor's front porch and waited for the police to arrive. While outside, she observed Defendant carrying her microwave and walking down the neighbor's driveway. Defendant crossed Frederick Boulevard and walked towards a gray car that was parked in a driveway across the street. Ingram recalled hearing a "clunk, like, he put the microwave on top of the car." She asserted that she did not know the name of the model of the vehicle.
{¶ 8} Ingram, the sole occupant of 1136 Frederick Boulevard, testified that she did not give Defendant permission to enter her home; nor did she give him permission to take her microwave. On the evening of the offense, Ingram provided a description of the offender to the police: a tall, light-skinned black male with "bushy" hair, wearing a powder blue jacket and hood. When the police apprehended Defendant, he was not wearing a blue jacket. He then had on a red shirt. However, Ingram identified him as being the man inside her house. Additionally, she stated that the door through which Defendant entered was locked; the lock had not been broken until that evening.
{¶ 9} Officers Vince Yurick and Robert Horvath also testified at trial. Officer Yurick and Officer Horvath were on duty the night of May 2, 2002, and responded to 1139 Frederick Boulevard. Officer Yurick recalled that although Ingram was very frantic and had trouble speaking clearly she provided him with a description of Defendant; a tall, light-skinned black male wearing a powder blue jacket, light gray pants, and hood. This description was relayed via radio to Officer Horvath who was in the process of searching for the offender.
{¶ 10} As Officer Horvath was conducting the search, he heard rustling behind the residence of 1116 Frederick Boulevard. Officer Horvath went to the back of the house and saw Defendant "[start] to pull himself like he was going to come over the fence[.]" He did not see anyone else in the direction that Ingram pointed to, other than Defendant. Defendant was wearing a light blue coat and light gray pants at this time. Officer Horvath then requested Defendant to stop. Defendant instead turned and ran westbound towards I-77. Officer Horvath gave chase, never losing sight of Defendant. Officer Horvath testified that as Defendant was running, "he took the [blue] coat off behind 1104 Valdes, and he was wearing a red shirt." Officer Horvath was able to apprehend Defendant as he tried to climb a fence near I-77.
{¶ 11} Additionally, Officer Horvath recalled seeing a gray car backing into a driveway. He stated that he did not pursue this vehicle as he had no information, at the time it was spotted, to indicate that it was involved in the burglary. Later that evening, at the police station, Officer Yurrick was then informed by Ingram that she had observed Defendant near a gray car across the street from her home. Officer Yurrick testified that he asked Ingram to "take [a] guess" as to the type of car she observed. He stated that Ingram thought it may have been a Mustang or a Cougar.
{¶ 12} Notwithstanding the slightly conflicting testimony, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the trial court's judgment. See State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the trial court did not act contrary to the manifest weight of the evidence in finding Defendant guilty of burglary. The record contains sufficient evidence of Defendant's commission of the offense. This is not a case where the evidence weighs heavily in favor of Defendant, meriting a reversal of the judgment and a new trial. Consequently, we conclude that the judgment of the Summit County Court of Common Pleas was not against the manifest weight of the evidence. Accordingly, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
{¶ 13} "The trial court erred by impressing [the] maximum sentence."
{¶ 14} In his second assignment of error, Defendant argues that the trial court committed error by imposing the maximum sentence for a burglary conviction. Defendant maintains that the findings required, by R.C. 2929.14(C) to impose a maximum sentence, were not properly made. We disagree.
{¶ 15} An appellate court may remand a matter to the trial court for resentencing if it finds that the trial court clearly and convincingly acted contrary to law. R.C. 2953.08(G)(2)(b). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." State v. Eppinger (2001), 91 Ohio St.3d 158, 164, quotingCross v. Ledford (1954), 161 Ohio St. 469, 477.
{¶ 16} The overriding purpose of felony sentencing is to punish the offender and to protect the public from future criminal acts. R.C.2929.11. R.C. 2929.12 provides that the trial court shall consider certain factors relating to the seriousness of the offender's conduct and others relating to the likelihood of the offender's recidivism when sentencing a defendant. The Ohio Supreme Court has held that R.C. 2929.12
does not require specific language or specific findings on the record in order to show that the trial court considered the applicable seriousness and recidivism factors. State v. Arnett (2000), 88 Ohio St.3d 208, 215.See State v. Neptune, 9th Dist. No. 3171-M, 2001-Ohio-1768, at 4.
{¶ 17} A trial court may impose the maximum prison term upon an offender if he falls into one of four categories: (1) those offenders committing the worst forms of the offense; (2) those posing the greatest likelihood of committing future crimes; (3) certain major drug offenders as provided in R.C. 2929.14(D)(3); and (4) certain repeat violent offenders as provided in R.C. 2929.14(D)(2). R.C. 2929.14(C).
{¶ 18} When imposing a maximum sentence, "the trial court must make a finding with respect to one of the four categories and specify its reasons for imposing the maximum sentence." State v. Newman, 9th Dist. No. 20981, 2002-Ohio-4250, at ¶ 8, citing R.C. 2929.19(B)(2)(d). See, also, State v. Edmonson (1999), 86 Ohio St.3d 324, 329. This Court has held that the trial court's findings may be in either the transcript of the sentencing hearing or present in the journal entry. State v.Pacely, 9th Dist. No. 01CA007784, 2002-Ohio-951, at ¶ 7, citingState v. Riggs (Oct. 11, 2000), 9th Dist. No. 19846, at 3-4.
{¶ 19} In this case, Defendant appeals the maximum sentence he received for his burglary conviction. Upon a review of the record, we find that the trial court articulated its findings underlying its imposition of the maximum sentence. When sentencing Defendant to the maximum sentence for burglary, the trial court stated that it considered the relevant factors and remarked that it was "astounded at the number of times [Defendant has] appeared before the [c]ourt, and the number of times [Defendant has] been put on probation and parole." The judge found that Defendant's record was "abominable" and that Defendant always committed "the same kind of crime." She concluded that "[t]his [c]ourt is convinced that [Defendant is] a likely candidate that if released, [he] would do it again[.]" The judge further stated that after "[l]ooking at the fact that [Defendant] ha[s] repeatedly performed the same type of crime, which means [he] will do it again, if [the court] uses any logic at all, once [Defendant] is let out; [he] would do it all over again. Obviously, we're not making an impression on [Defendant] at all."
{¶ 20} In addressing the imposition of maximum prison terms, the journal entry lists the court's findings as: "(1) lengthy prior felony record; (2) currently on parole; (3) prior prison terms served; (4) psychological harm to the victim; (5) repeatedly committed the same type of crime; (6) anything less would demean the seriousness of the offense; (7) recidivism likely; (8) any other relevant factor indicating conduct is more serious; [and] *** Defendant is not amenable to community control[.]"
{¶ 21} After a thorough review of the record, we find that the trial court made all the requisite findings in order to impose the maximum sentence. Notwithstanding the fact that the trial court did not specifically state its findings in regards to R.C. 2929.14(C), we conclude the reasons stated at the sentencing hearing, combined with the findings made in the journal entry, are sufficient to satisfy the statutory requirements to impose the maximum sentence. "[T]here must be a finding on the record that the offender posed the greatest likelihood of recidivism or committed the worst form of the offense. We do not require the court to utter any `magic' or `talismanic' words, but it must be clear from the record that the court made the required findings." (Citations omitted.) State v. Duvall, 8th Dist. No. 80316, 2002-Ohio-4574, at ¶ 35, quoting State v. White (1999),135 Ohio App.3d 481, 486. See Arnett, 88 Ohio St.3d at 215 (stating that specific language or specific findings on the record are not required in order to show that the trial court considered the applicable factors).
{¶ 22} Consequently, we cannot say that the record contains clear and convincing evidence that the trial court acted contrary to the law. Accordingly, Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
{¶ 23} "[Defendant] received ineffective assistance of counsel."
{¶ 24} In his third assignment of error, Defendant asserts that his trial counsel was ineffective. Defendant states that counsel's errors, which included a failure to make a Crim.R. 29 motion for acquittal, failure to file a notice of alibi, and failure to call any witnesses on Defendant's behalf, resulted in prejudice to him. Defendant's assertions lack merit.
{¶ 25} In order to establish the existence of ineffective assistance of counsel, the defendant must satisfy a two-pronged test: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
{¶ 26} Defendant bears the burden of proof on this matter. Colon
at ¶ 49, citing State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, there exists a strong presumption of the adequacy of counsel's performance, and that counsel's actions were sound trial tactics. Colon at ¶ 49, citing Smith, 17 Ohio St.3d at 100. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." State v.Watson (July 30, 1997), 9th Dist. No. 18215, at 4. Additionally, debatable trial tactics do not give rise to a claim for ineffective assistance of counsel. In Re: Simon (June 13, 2001), 9th Dist. No. 00CA0072, at 4, citing State v. Clayton (1980), 62 Ohio St.2d 45, 49. A defendant should put forth a showing of a substantial violation of an essential duty. Watson, supra, at 6.
{¶ 27} Prejudice entails a reasonable probability that, but for counsel's errors, the result of the trial would have been different.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The court is also to consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Colon at ¶ 49, quoting Strickland,466 U.S. at 690. An appellate court may analyze the second prong of theStrickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. See State v. Loza (1994),71 Ohio St.3d 61, 83.
{¶ 28} Upon a review of the record, we conclude that Defendant failed to show that either the presentation of an alibi or the offering of witness testimony would have caused the jury to reach a different verdict. Nor did he show a substantial violation of an essential duty on the part of defense counsel. The calling of witnesses is a trial tactic, and as stated earlier, absent a showing of a substantial violation of an essential duty, debatable trial tactics of defense counsel generally are not sufficient to give rise to a claim for ineffective assistance of counsel. State v. Coleman (Nov. 4, 1992), 9th Dist. No. 15612, at 5. Furthermore, counsel functioned effectively at the hearing inasmuch as he actively participated by cross-examining the State's witnesses. See Statev. Paxton, 9th Dist. No. 01CA007818, 2002-Ohio-221, at 13 (finding effective assistance of counsel where defense attorney thoroughly cross-examined State's witnesses and defendant failed to show prejudice).
{¶ 29} Additionally, Defendant alleges that members of the jury witnessed Defendant in handcuffs at an elevator. However, Defendant has not shown that he was prejudiced by this "brief, inadvertent, and outside of the courtroom contact[.]" See State v. Talley (Apr. 24, 1996), 9th Dist. No. 95CA0060, at 3. Therefore, as Defendant failed to satisfy theStrickland test, his ineffective assistance of counsel claim must fail.Colon at ¶ 47-48, citing Strickland, 466 U.S. at 687.
{¶ 30} Accordingly, Defendant's third assignment of error has no merit and is overruled.
{¶ 31} Defendant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
BAIRD, J. and BATCHELDER, J., CONCUR.